UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JUAN URRUTIA,

                  Petitioner,

   -vs-

GRAY GREEN, Superintendent,

                  Respondent.
_____

**REPORT AND RECOMMENDATION**
**No. 05-CV-6153(CJS)(VEB)**

## I.      Introduction

Juan Urrutia ("Urrutia" or "petitioner") has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Court on one count of first degree sodomy. The matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for the issuance of a Report and Recommendation regarding the disposition of Urrutia's petition.

## II.     Factual Background and Procedural History

On August 1, 1996, Urrutia was arrested by officers from the Rochester Police Department after an investigation revealed that between June 1996 and July 7, 1996, at unknown times at 223 Avenue C in the City of Rochester, Urrutia had deviate sexual intercourse by forcible compulsion with the victim, A.D., aged nine at the time of the offense. A.D. was the daughter of the woman with whom Urrutia was involved in a sexual relationship; the crimes allegedly occurred at the woman's house, where Urrutia spent many nights. According to the investigation, Urrutia went into the victim's bedroom on three occasions while she was sleeping

-1-

and placed his tongue on her vaginal area. After the police determined that Urrutia did not understand English, they read him his *Miranda* warnings in Spanish. Urrutia stated that he understood them and agreed to waive his rights and speak to the police without an attorney present. Urrutia gave a statement to the police denying touching the victim in a sexual way but admitting that he had a fetish about having his feet massaged and sometimes had the victim massage his feet. (The statement was held to be admissible at trial). Urrutia subsequently was charged with first degree sodomy, first degree sexual abuse, and endangering the welfare of a child. Following a jury trial in Monroe County Court (Smith, J.), Urrutia was convicted of the count of first degree sodomy. He was sentenced, on September 3, 1997, to 12 ½ to 25 years imprisonment.

On direct appeal, Urrutia argued that his conviction was not supported by the weight of this evidence and that his sentence was harsh and excessive. The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed his conviction. *People v. Urrutia*, 2 A.D.2d 1475 (App. Div. 4th Dept. 2003). Leave to appeal to the New York Court of Appeals was denied. *People v. Urrutia*, 2 N.Y.2d 765 (N.Y. 2004).

This habeas petition followed in which Urrutia raises one ground for relief–that his conviction was not supported by the weight of this evidence. *See* Petition at 1-15 (Docket No. 1). Respondent argues that this claim presents only an issue of state law and therefore is not cognizable on federal habeas review. *See* Respondent's Memorandum of Law ("Resp't Mem.") at 2-4 (Docket No. 5). For the reasons set forth below, the Court recommends that the petition for a writ of habeas corpus be denied and dismissed.

III.   **Discussion**

   A.   **Petitioner's claim that the verdict was against the weight of the evidence is a state law claim.**

The Court turns first to the claim that his verdict was against the weight of the evidence. This claim derives from C.P.L. § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. Crim. Proc. Law § 470.15(5). Thus, a "weight of the evidence" argument presents only a state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. *People v. Bleakley*, 69 N.Y.2d 490, 495 (1987). Since a "weight of the evidence claim" is purely a matter of state law, it is not cognizable on habeas review. *See* 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Federal courts routinely dismiss claims attacking a verdict as against the weight of the evidence on the basis that they are not federal constitutional issues cognizable in a habeas proceeding. *Ex parte Craig*, 282 F. 138, 148 (2d Cir. 1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence . . ."), *aff'd*, 263 U.S. 255  (1923); *Garrett v. Perlman*, 438 F. Supp.2d 467, 470 (S.D.N.Y. 2006) (same); *Douglas v. Portuondo*, 232 F. Supp.2d 106, 116 (S.D.N.Y. 2002) (same)*; Garbez v. Greiner*, No. 01Civ.9865(LAK)(GWG), 2002 WL 1760960, at *8 ("[B]y raising a 'weight of the evidence' argument, [petitioner] does

not present to this Court a federal claim as required by 28 U.S.C. § 2254(a). Instead, [petitioner]

raises an error of state law, which is not available for habeas corpus review."); *Lemons v.*

*Parrott*, 01 Civ. 9366, 2002 WL 850028, at *3 (S.D.N.Y. May 2, 2002) ("[W]e have no authority

to review a weight of the evidence argument because it is a state law claim."); *McBride v.*

*Senkowski*, 98 Civ. 8663, 2002 WL 523275 at *4 n. 2 (S.D.N.Y. Apr. 8, 2002) (holding that a

weight of evidence is not cognizable on habeas review); *Correa v. Duncan*, 172 F. Supp.2d 378,

381 (E.D.N.Y.2001) (A "'weight of the evidence' argument is a pure state law claim grounded in

New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on

federal due process principles. Accordingly, the Court is precluded from considering the [weight

of the evidence] claim.") (citations omitted); *Peralta v. Bintz*, 00 Civ. 8935, 2001 WL 800071, at

*5 (S.D.N.Y. July 16, 2001) (Petitioner "raises only the state law issue of whether the weight of

the evidence supported his conviction. Because [petitioner] raises no cognizable federal issue, his

petition must be denied."); *Kearse v. Artuz*, 99 Civ. 2428, 2000 WL 1253205, at *1 (S.D.N.Y.

Sept. 5, 2000) ("Disagreement with a jury verdict about the weight of the evidence is not grounds

for federal habeas corpus relief."); *Rodriguez v. O'Keefe*, 96 Civ.2094, 1996 WL 428164, at *4

(S.D.N.Y. July 31, 1996) ("A claim that the verdict was against the weight of the evidence is not

cognizable on habeas review."), *aff'd*, No. 96-2699, 122 F.3d 1057 (table) (2d Cir. Sept. 9,

1997), *cert. denied*, 522 U.S. 1123 (1998); *see also*, *e.g.*, *Maldonado v. Scully*, 86 F.3d 32, 35

(2d Cir.1996) (dismissing habeas claim because "assessments of the weight of the evidence or

the credibility of witnesses are for the jury and not grounds for reversal on appeal" and stating

that it must defer to the jury's assessments of both of these issues).

       Therefore, the Court agrees with respondent that Urrutia's claim that his verdict was

against the weight of the evidence is purely a state law claim that does not present a federal constitutional issue cognizable on habeas review. Thus, the petition accordingly can be dismissed on this basis alone.

### B. Even construing the *pro se* claim liberally as an "insufficiency of the evidence claim," it does not provide a basis for habeas relief.

The Court recognizes the principle that complaints of *pro se* petitioners are to be considered liberally in their favor, *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Accordingly, some habeas courts have construed "weight of the evidence" claims as "insufficiency of the evidence" claims. *E.g.*, *Davis v. McLaughlin*, 122 F. Supp.2d 437, 441 (S.D.N.Y. 2000) (treating petitioner's claim that his conviction was against the weight of the evidence and that the prosecution did not prove his guilt beyond a reasonable doubt as "legal sufficiency" claim); *Wilson v. Senkowski*, No. 02 Civ. 0231(HB)(AJP), 2003 WL 21031975, at *8 (S.D.N.Y. May 7, 2003) (denying "weight of the evidence-claim as not cognizable on federal habeas review but also "broadly interpret[ing]" petitioner's "weight of the evidence" claim to raise a "sufficiency of the evidence claim") (Report and Recommendation ) (citing *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999)). Here, respondent has provided an argument that the evidence against petitioner was legally sufficient under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 3019 (1979). *See* Resp't Mem. at 4-5 (Docket No. 5). In keeping with the precept of *Haines v. Kerner*, 404 U.S. at 520, and in the interests of judicial economy and finality, the Court also recommends deciding this petition on the alternative basis that petitioner's "weight of the evidence"claim is a "sufficiency of the evidence" claim and that it is without merit as more particularly discussed below.

   **1.**  **Legal principles applicable on habeas review to "insufficiency of the evidence" claims**

   "'[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."'" *Jackson v. Virginia*, 443 U.S. at 315 (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). However, "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." *Id.* at 317. Accordingly, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254–if the settled procedural prerequisites for such a claim have otherwise been satisfied–the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324.

   Petitioner bears a "very heavy burden" in attempting to obtain a writ of habeas corpus based upon an "insufficiency of the evidence claim." *United States v. Carson*, 702 F.2d 351, 361 (2d Cir.) (citations omitted), *cert. denied*, 462 U.S. 1108 (1983); *accord*, *e.g.*, *Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000); (stating that a "petitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence"); *United States v. Middlemiss*, 217 F.3d 112, 117 (2d Cir. 2000); *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000). The habeas court's review of the jury's factual findings is limited; the *Jackson* "inquiry does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318 (quotation omitted; emphasis in original). Instead, the Supreme Court explained in *Jackson*,

the relevant question is whether, after viewing the evidence in the light most
favorable to the prosecution, *any* rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. This familiar standard
gives full play to the responsibility of the trier of fact fairly to resolve conflicts in
the testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 318-19 (citations omitted; emphasis in original); *accord*, *e.g.*,

*United States v. Middlemiss*, 217 F.3d at 117.

### a.      Legal sufficiency of the evidence against petitioner

The prosecution presented proof at trial that during the summer of 1996, Urrutia spent

many nights at the residence of Daisy DeJesus ("DeJesus"), with whom he was sexually

involved. Between approximately June 20, 1996, and July 11, 1996, petitioner entered the

bedroom of DeJesus' nine-year-old daughter (M) and eleven-year-old son (G) in the middle of

the night. M had placed her bed in the closet because she did not want petitioner to come in.

T.214.[1] While she was sleeping, petitioner entered the closet, removed M's shorts, and began

touching her vagina with is tongue. T.216. M. woke in the middle of the act to realize what was

occurring. In addition to touching her vagina with his tongue, petitioner also rubbed the backs of

M's upper legs.  Petitioner stopped and left the room only after hearing DeJesus get up to the use

the bathroom. T.218. M also testified that petitioner told her brother, G, to lick petitioner's feet.

*Id.* M testified that she told her mother about this incident later.

G was not awakened by the first incident involving M. However, G later witnessed an act

of violence against his sister when petitioner entered their bedroom on a subsequent evening and

slapped M in the face. G confirmed that he licked petitioner's feet after petitioner asked him to

---

[1]         Citations to "T.__" refer to the trial transcript.

do it. T.248.

The police officer who interviewed and arrested Urrutia testified that Urrutia told him that he had spoken to DeJesus the night before and knew the nature of the investigation. He added that DeJesus had lied to the police and stated that M was lying. Petitioner admitted to staying at DeJesus' house and being sexually involved with her. He stated that the children had walked in on he and DeJesus having sexual intercourse. Urrutia discussed with the police a caressing motion called "cosaquillas" that he had done to the victim and her brother and had allowed them to do to his feet. He claimed that did "cosaquillas" on all parts of the children's bodies but never outside the presence of another adult. After Urrutia grew increasingly angry in his denials of sexually touching the victim or her brother, the officer arrested him. T.17-18.

The case worker with the Department of Social Services testified for the prosecution about her interview of M, the victim. The case worker testified that she elicited the description of the sexual assault from the victim without the use of leading or multiple choice questions. She denied supplying testimony to the victim and stated that she had only seen M for a few minutes prior to taking the stand at trial.

Petitioner testified at trial and denied any sexual contact with the victim or her brother. The only physical contact to which he admitted was having G, the victim's brother, rub medicine on his feet on one occasion, and the "tickling" that petitioner called "cosaquillas." T.307. Petitioner's description of "cosaquillas" at trial was different than his description of the act to the police during the interview. At trial, petitioner described "cosaquillas" as a "tickling" as opposed to the "caressing" or a "massaging" motion which he described and demonstrated to the police. T.321-22. The frequency of the touching to which Urrutia admitted was greater during the

-8-

interview than at trial, as well. During the interrogation, petitioner admitted that he had a "foot fetish" and "would have the kids do his feet." R.18. At trial, petitioner denied that the children ever touched his feet except the one occasion where he had G, the victim's brother, apply medicine to petitioner's feet. During cross-examination, Urrutia first stated that he did not sleep in DeJesus' bedroom all the time; later on, Urrutia stated that he slept in DeJesus' room each time he stayed over at her house. Still later, Urrutia testified that he slept on the living room sofa when DeJesus' other boyfriend, Carlos, also was staying over.

In order to convict a defendant on a charge of first degree sodomy[2] pursuant to New York Penal Law, a prosecutor must prove, beyond a reasonable doubt, that the defendant "engage[d] in oral sexual conduct or anal sexual conduct with another person . . . [b]y forcible compulsion[.]" N.Y. Penal Law § 130.50(1). The Penal Law defines "oral sexual conduct" as "conduct between persons consisting of contact between the mouth and the penis, the mouth and the anus, or the mouth and the vulva or vagina." N.Y. Penal Law § 130.00(2)(a). "Forcible compulsion," for purposes of sexual offenses in New York, means "to compel by either . . . [the] use of physical force; or a threat, express or implied, which places a person in fear of immediate death or physical injury to himself, herself or another person, or in fear that he, she or another person will immediately be kidnapped." N.Y. Penal Law § 130.00(8)(a), (b).

The Court notes that as a matter of New York law, the child victim, being under the

---

[2]        The New York State Legislature has renamed this offense, "Criminal Sexual Act in the First Degree." The pertinent statutory section in the Penal Law has remained the same. *See* N.Y. Penal Law 130.50(1), L.1965, c. 1030; amended L.2000, c. 1, § 37, eff. Feb. 1, 2001; L.2003, c. 264, § 20, eff. Nov. 1, 2003.

statutory age of consent at the time of the incident, was incapable of consenting to participate in a

"consensual" sexual act with Urrutia. N.Y. Penal Law § 130.05(3)(a) ("A person is deemed

incapable of consent when he or she is . . . less than seventeen years old[.]"); *accord, e.g., People*

*v. Fielding*, 39 N.Y.2d 607, 611 (N.Y. 1976). Here, the victim presented testimony as to the oral

contact between Urrutia's mouth and her vagina. As to the element of forcible compulsion, the

victim testified that she was afraid of having petitioner come into her room, and there is also the

obvious physical size difference between a nine-year-old girl and grown man. It is true that no

one else witnessed the oral sexual contact between the victim and petitioner that night; the

brother slept through the incident. However, the uncorroborated testimony of the child victim is

sufficient to support a conviction in this case where the victim, because of her infancy, cannot

"consent" to engaging in a sexual act with petitioner. *People v. Fielding*, 39 N.Y.2d at 611

(holding that defendant's minor victims were not "accomplices," and thus their uncorroborated

testimony was sufficient to support defendant's conviction; stating that "[s]ince the child victims

were not accomplices of defendant as a matter of law, there is little reason to hold that their

testimony was uncorroborated because they were all victims of defendant on different occasions

and in different combinations"). Here, the prosecution established each element of the offense at

issue through the victim's testimony.

Turning to issues of witness credibility, any claim by petitioner that a witness' testimony

was unworthy of belief is not reviewable in habeas proceedings since credibility determinations

are the province of the jury. *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996)

("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and

not grounds for reversal on [habeas] appeal."); *see also United States v. Vasquez*, 267 F.3d 79

(2d Cir. 2001) ("The jury chose to believe the witnesses' testimony despite any inconsistencies. We will defer to the jury's assessment of credibility.") (citing *United States v. Payton*, 159 F.3d 49, 56 (2d Cir. 1998) ("Where there is conflicting testimony at trial, we defer to the jury's resolution of the witnesses' credibility.") (citing *United States v. Stratton*, 779 F.2d 820, 828 (2d Cir. 1985)); *Glasser v. United States*, 315 U.S. 60, 80 (1942) ("It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it."), *superseded by statute*, *in part*, *as recognized in Bourjaily v. United States*, 483 U.S. 171, 181 (1987); *Gruttola v. Hammock*, 639 F.2d 922, 928 (2d Cir. 1981) ("The jury chose to believe the State's witnesses, despite the inconsistencies in the evidence . . . . We cannot say that no rational jury could have found guilt beyond a reasonable doubt on all the evidence.").

After reviewing all of the evidence presented at Urrutia's trial in the light most favorable to the prosecution, it is clear to the Court that there was more than sufficient evidence as to each element of the count of first degree sodomy on which petitioner was convicted. Indeed, the evidence against petitioner was compelling. Accordingly, based on the testimony presented at trial, it was entirely rational for the jury to return the verdict convicting Urrutia as it did. The Court recommends that habeas relief not issue on this claim.

## IV.    Conclusion

For the reasons stated above, the Court recommends that Juan Urrutia's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED**.  Furthermore, the

Court believes that Urrutia has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). Therefore, the Court recommends that a Certificate of Appealability be **DENIED**.

/s/ *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:        May 22, 2007
              Rochester, New York.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: Rochester, New York
        May 22, 2007.

-14-